UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 5:25-cv-02594-MWC-SK | Date: October 3, 2025 |
| Title: R.S. v. Ernesto Santacruz, Jr. *et al.* | |

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: Order GRANTING IN PART and DENYING IN PART Petitioner's *Ex Parte* Application for Temporary Restraining Order (Dkt. 3)**

　　Before the Court is Petitioner R.S.'s ("Petitioner") *ex parte* application ("Application") seeking a temporary restraining order ("TRO") to enjoin Ernesto Santacruz, Jr., Todd M. Lyons, Kristi Noem, the U.S. Department of Homeland Security, Pamela Bondi, the Executive Office for Immigration Review, and Fereti Semaia (collectively, "Respondents") from continuing its current actions or taking any additional actions to effect R.S.'s removal from the United States until the Court has adjudicated his Petition for Writ of Habeas Corpus ("Petition").[1] *See* Dkt. # 3 ("*App.*"). The Government opposed the Application ("Opposition"). *See* Dkt. # 6 ("*Opp.*"). For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the Application.

I.　Background

　　The Application details that Petitioner is a 42-year-old man originally from Iran. Dkt. # 3-1 ("*Kahn Decl.*") ¶ 3. He fled Iran after protesting the current Iranian regime, though the Iranian government beat and threatened him with incarceration and execution prior to his departure. *Id.* Petitioner arrived in the United States around December 22, 2022, by crossing the U.S.-Mexico border and entered the United States without inspection. *Id.* ¶ 4. Upon entering the United States, Petitioner surrendered himself to U.S. immigration authorities and requested asylum. *Id.* After he

---

[1] Ernesto Santacruz, Jr. is the Field Office Director of Enforcement and Removal Operations at the Adelanto Field Office for U.S. Immigration and Customs Enforcement ("ICE"); Todd M. Lyons is the Acting Director of ICE; Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"); Pamela Bondi is the Attorney General of the United States; and Fereti Semaia is the Warden of the Adelanto Detention Facility.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  5:25-cv-02594-MWC-SK | Date: October 3, 2025 |
| Title:  R.S. v. Ernesto Santacruz, Jr. *et al.* | |

spent roughly five days in detention, ICE released Petitioner on his own recognizance and served him with a Notice to Appear on February 22, 2023. *Id.* ¶¶ 4–6.

Pursuant to 8 U.S.C. § 1229(a), ICE placed Petitioner in removal proceedings. *Id.* ¶ 8. It charged Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) based on an allegation that he entered the United States without inspection. *Id.* Petitioner has since complied with ICE's requests of him, including attending all court hearings and filing his application for asylum within the one-year filing deadline. *Id.* ¶ 9. His application for asylum was based on his assertion that he would suffer political violence if he returned to Iran. *Id.* ¶ 10.

On June 4, 2025, Petitioner began his Merits Hearing before United States Immigration Judge Joyce Bakke Varzandeh. *Id.* ¶ 12. To allow for further testimony, Judge Varzandeh continued the Merits Hearing to July 14, 2025. *Id.* On June 30, 2025, however, ICE detained Petitioner at his home and took him to the Adelanto detention facility, where he has remained since. *Id.* ¶ 13. Petitioner sought a bond hearing on July 7, 2025, but Judge Varzandeh issued a decision on July 11, 2025 denying bond on the grounds that she lacked jurisdiction to grant the requested relief. *Id.* ¶ 14.

The Petition does not contest Petitioner's pending removal proceedings or ICE's authority to remove him. *App.* 4. Rather, Petitioner "challenges the processes ICE has employed and continues to employ to detain [Petitioner] while his removal proceedings are pending." *Id.* He asks the Court for an order: (i) granting his immediate release; (ii) preventing Respondents from imposing any additional restrictions on him unless a court otherwise deems them necessary at a future hearing; (iii) enjoining Respondents from re-detaining or re-arresting Petitioner absent pre-deprivation notice describing the change of circumstances necessitating his arrest and detention, and a timely hearing accompanying such a notice; and (iv) establishing that, at any hearing of the kind Petitioner requests, Respondents bear the burden "of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight" (and allow Petitioner to have counsel present at such a hearing). *App.* 12–13.

Respondents oppose on several grounds. They argue that: the Court lacks jurisdiction under 8 U.S.C. § 1252; Petitioner is lawfully detained pending the resolution of his removal proceedings; and that, even if the Court disagrees with Respondents' other arguments, the proper remedy would for the Court to order a prompt bond hearing pursuant to 8 U.S.C. § 1226(a). *See generally Opp.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02594-MWC-SK                                     Date: October 3, 2025

Title:        R.S. v. Ernesto Santacruz, Jr. *et al.*

II.   Legal Standard

    A.   *Ex Parte* Applications

"Circumstances justifying the issuance of an ex parte order are extremely limited." *Reno v. Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (quoting *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 438–39 (1974)). "Consistent with [the Supreme Court's] overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO." *Id.* (discussing parties' failure to provide notice under Fed. R. Civ. P. 65(b)).

In this District, *ex parte* applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an *ex parte* application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492. "Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have." *Id.* at 493 (internal quotation marks omitted).

    B.   Temporary Restraining Orders

Federal Rule of Civil Procedure ("Rule") 65 grants district courts the power to issue injunctions and restraining orders. Issuance of a TRO, as a form of preliminary injunctive relief, is an extraordinary remedy, and the applicant for such a remedy bears the burden of proving its propriety. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). In general, the showing required for a TRO and a preliminary injunction are the same. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). The applicant for a TRO must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent the injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). "In the Ninth Circuit, a plaintiff may also prove a TRO is warranted by raising 'serious questions going to the merits.'" *NML Cap., Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1125 (C.D. Cal. 2011) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011)). Where the non-movant is a government entity, "the third and fourth [*Winter*] factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-02594-MWC-SK                                              Date: October 3, 2025

Title:  R.S. v. Ernesto Santacruz, Jr. *et al.*

III.  Discussion

    A.  *Ex Parte* Application and *Mission Power* Factors

The Court finds that Petitioner has satisfied the *Mission Power* factors. Petitioner has been in custody since June without access to a bond hearing, meaning that he has been unable to work and has not received any process to advocate for his release. *App.* 5. If the Court heard the Application according to regularly noticed motion procedures, that would leave Petitioner detained without access to any due process for at least an additional 28 days. Moreover, although Respondents highlight that Petitioner waited three months from the date of his re-detention to file the Application, that alone does not preclude the Court from granting him *ex parte* relief. Though Petitioner could have sought the TRO sooner, the fact that he provided ICE time to give him some additional due process cannot cut against him. However, after three months in continued detention without a bond hearing, the Court finds *ex parte* relief warranted. *See Mosqueda v. Noem*, No. 5:25-cv-02304 CAS (BFM), 2025 WL 2591530, at *2 (C.D. Cal. Sept. 8, 2025) ("The Court finds that petitioners' *ex parte* request for relief is appropriate because petitioners allege that their continued detention without bond hearings, which they would be entitled to under 8 U.S.C. 1226(a), constitutes irreparable injury." (citation omitted)).

    B.  Jurisdiction

First, the Court finds that it has jurisdiction to rule on the TRO. Before turning to the *Winter* factors, the Court will address Respondents' contention that the Court lacks jurisdiction to adjudicate the TRO under 8 U.S.C. §§ 1252. In laying out their argument, Respondents point to two provisions in that statute: § 1252(b)(9) and § 1252(g).

8 U.S.C. § 1252(b)(9) provides:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien from the United States* under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02594-MWC-SK                                                    Date: October 3, 2025

Title:        R.S. v. Ernesto Santacruz, Jr. *et al.*

> nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added). In interpreting the statute, *Jennings v. Rodriguez*, 583 U.S. 281 (2018) is instructive. The Supreme Court determined that the "arising from" language of § 1252(b)(9) does not mean that the provision covers every action that technically follows the commencement of removal proceedings, as that would bar judicial review of questions of law and fact that are unrelated to the removal proceeding until there was a final order of removal. *Jennings*, 583 U.S. at 292–95. Like the class in *Jennings*, Petitioner here is "not asking for review of an order of removal," nor is he "challenging the decision to detain [him] in the first place or to seek removal," and he is not "challenging any part of the process by which [his] removability will be determined." *Id.* at 294. Rather, he challenges "the processes ICE has employed and continues to employ to detain [Petitioner] while his removal proceedings are pending." *App.* 4. "Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar." *Jennings*, 582 U.S. at 294–95 (footnote omitted).

Respondents also cite § 1252(g) to support their argument that the Court lacks jurisdiction to rule on the TRO. That section reads:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien *arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter*.

8 U.S.C. § 1252(g) (emphasis added). Respondents argue that "[h]ere, Petitioner challenges the government's decision and action to detain him, which arises from DHS's decision to commence removal proceedings, and is thus an 'action taken . . . to remove [him] from the United States.'" *Opp.* 5 (quoting 8 U.S.C. § 1252(b)(9)). But the same reasoning discussed previously with respect to § 1252(b)(9) applies to § 1252(g). *See Jennings*, 583, U.S. at 294 ("We did not interpret [§ 1252(g)] to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves.") (citing *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999)). Since Petitioner's bond denial claim does not challenge any decision to commence proceedings, adjudicate cases, or execute removal orders, the Court finds that § 1252(g) does not present a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  5:25-cv-02594-MWC-SK | Date: October 3, 2025 |
| Title:  R.S. v. Ernesto Santacruz, Jr. *et al.* | |

jurisdictional bar to judicial review. *See Mosqueda*, 2025 WL 2591530, at *3; *Henberto Arreola Armenta v. Noem*, No. 5:25-cv-02416-JFW-SP (C.D. Cal. Sept. 16, 2025), Dkt. # 7, 3.

C.  Request for Bond Hearing

The Court finds that Petitioner is entitled to the TRO with respect to its request for a bond hearing.

*i.  Likelihood of Success on the Merits*

Beginning with Petitioner's likelihood of success on the merits, Petitioner argues that 8 U.S.C. § 1226(a) governs his detention. *App.* 8–9. Respondents counter that § 1225(b)(2)(A) governs Petitioner's detention, which strips Immigration Judges of the authority to hear bond requests or to grant bond based on the plain language of the statute and the reasoning in *Matter of Jonathan Javier Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).

Here, the Court determines that Petitioner is correct—§ 1226(a) governs. That provision states, in part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . .

8 U.S.C. § 1226(a). *Jennings* clarified that "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." 583 U.S. at 306 (citing 8 C.F.R. § 1236.1(d)(1)); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including . . . an initial bond hearing before a neutral decisionmaker.").

By contrast, 8 U.S.C. § 1225(b)(2)(A) reads: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal proceeding]." 8 U.S.C. § 1225(b)(2)(A).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02594-MWC-SK                                          Date: October 3, 2025

Title:   R.S. v. Ernesto Santacruz, Jr. *et al.*

The Court agrees that § 1226(a) controls. Respondents contend that they have detained Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A), but the Court finds this unpersuasive. Analyzing the two provisions together, and "giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous," *Shulman v. Kaplan*, 58 F.4th 404, 410–11 (9th Cir. 2023), § 1226(a) and § 1225(b)(2)(A) apply to different sets of noncitizens. Section § 1226(a) applies to those individuals who are already in the country and detained, while § 1225(b) applies "primarily to aliens *seeking entry into the United States*." *Jennings*, 583 at 281, 297 (emphasis added); *Mosqueda*, 2025 WL 2591530, at *5. As such, Petitioner has demonstrated a likelihood of success on the merits as to his entitlement to a bond hearing.

 *ii.* *Irreparable Harm*

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Court finds that Petitioner would be immediately and irreparably harmed by his continued deprivation of liberty without the bond hearing that he is entitled to under § 1226(a). *See Hernandez v. Sessions*, 872 F.3d 976, 994–95 (9th Cir. 2017) (finding irreparable harm was likely to result from government's policy of not considering financial ability to pay immigration bonds); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1144–45 (9th Cir. 2013) (finding irreparable harm was likely to result from government's reading of immigration detention statutes as not requiring a bond hearing for noncitizens subject to prolonged detention). Accordingly, this factor weighs in favor of granting the TRO with respect to Petitioner's entitlement to a bond hearing.

 *iii.* *Balance of Equities and Public Interest*

As detailed above, the last two Winter factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As to Respondents' interests, there is a compelling interest in the enforcement of the nation's immigration laws. *See Medina v. U.S. Dep't of Homeland Sec.*, 313 F. Supp. 3d 1237, 1252 (W.D. Wash. 2018). Still, the balance of equities and the public interest factors tip in favor of Petitioner because he is challenging a policy that is likely in violation of federal law. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable or in the public's interest to allow the [government] . . . to violate the requirements of federal law.") (citations omitted); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (the government "cannot suffer harm from an injunction that merely ends an unlawful practice").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02594-MWC-SK                                           Date: October 3, 2025

Title:          R.S. v. Ernesto Santacruz, Jr. *et al.*

Accordingly, and in light of the other factors that the Court has already examined, Petitioner is entitled to a bond hearing before the Immigration Court.

### D.   Request for Release from Detention and Associated Relief

The Court also finds, however, that based on the current record, Petitioner has not made the requisite showing of a likelihood of success on the merits to warrant immediate release from custody or the associated relief that he requests. "Courts should act cautiously when reviewing matters entrusted to the Executive Branch, especially those involving immigration, lest it alter the balance between co-equal branches of government." *Jazi v. Rubio*, No.: 25-cv-27 BEN, 2025 WL 2420690, at *2 (S.D. Cal. Aug. 20, 2025); *see also Noem v. Vasquez Perdomo*, 606 U.S. ___, ___ S. Ct. ___, 2025 WL 2585637, at *5 (2025) (Kavanaugh, J., concurring) ("Especially in an immigration case like this one, it is also important to stress the proper role of the Judiciary . . . . [W]e . . . must decline to step outside our constitutionally assigned role to improperly *restrict* reasonable Executive branch enforcement of the immigration laws" (emphasis in original)). The Application does not contest that Petitioner may be subject removal. *See generally App.* Without more—and mindful of its limited role—the Court cannot assume that ICE has no basis to detain Petitioner.

Petitioner has also failed to make the requisite showing as to the remaining *Winter* factors such that the Court can grant the Application. In general, "[t]he Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'" *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) (quoting *Hernandez*, 872 F.3d at 995). Those harms can include "the subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees who parents are detained." *Hernandez*, 872 F.3d at 995. But the existence of those harms generally does not allow the Court to automatically assign the injuries of other detainees to Petitioner here, especially when Petitioner has not provided detail as to the harms he is experiencing in detention. *Cf. Sheet Metal Workers' Int'l Ass'n Loc.*, *of Sheet Metal Workers' Int'l Ass'n, AFL-CIO*, 660 F. Supp. 1500, 1508 (S.D. Cal. 1987) ("This court cannot simply assume irreparable injury in the absence of proof, and this lack of proof is fatal . . . ."). To be sure, the lack of due process associated with Petitioner's detention constitutes irreparable harm, but the Court has already ordered relief more narrowly tailored to that harm.

Lastly, the balance of equities and public interest factors do not show that the Court must order Petitioner released. "It is always in the public interest to protect the country's borders and enforce its immigration laws." *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 501 F. Supp. 3d 792, 825 (N.D. Cal. 2020) (citing *Landon v. Plascencia*, 459 U.S. 21, 24 (1982)). Still, "'[t]he public interest benefits from an injunction that ensures that individuals are not deprived of their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02594-MWC-SK                                                          Date: October 3, 2025

Title:        R.S. v. Ernesto Santacruz, Jr. *et al.*

liberty and held in immigration detention' in violation of the Constitution." *Xuyue Zhang v. Barr*, 612 F. Supp. 3d 1005, 1017 (C.D. Cal. 2020) (citing *Hernandez*, 872, F.3d at 996). Here, the Application does not even contend that Petitioner is a United States citizen or even a lawful permanent resident, *see generally App.*, so the Court will not assume that there is no basis for detaining Petitioner or that his detention is not related to the proper enforcement of the nation's immigration laws. And in spite of the potential lack of due process provided to him, the balance of equities and public interest factors do not tip strongly in Petitioner's favor, as the remaining relief he requests is not narrowly tailored to address his lack of due process.

Without a clear showing that the *Winter* factors favor Petitioner in favor of granting his removal from ICE detention, the Court cannot do so. Accordingly, the Court will also decline to prevent respondents from imposing additional restrictions on Petitioner, nor will it enjoin Respondents from re-detaining or re-arresting Petitioner (though, upon any re-detention, Respondents must provide Petitioner his requisite due process pursuant to 8 U.S.C. § 1226(a)).

IV.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Application. Respondents must provide Petitioner with an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven days of this Order. The Court denies Petitioner's requested relief in all other respects. A preliminary injunction hearing is set for October 15, 2025, at 10:00 a.m. Petitioner shall file his opening brief and all related submissions no later than end of day on October 8, 2025. Respondents shall file its opposition no later than end of day on October 13, 2025. Petitioner shall file his reply brief no later than 12 p.m. on October 14, 2025.[2]

**IT IS SO ORDERED.**

                                                                                                                      :
                                                                                 **Initials of Preparer**   TJ

---

[2] All dates and times reference Pacific Standard Time.