UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No.  5:25-cv-02594-MWC-SK | Date: October 28, 2025 |
| Title:  R.S. v. Ernesto Santacruz, Jr. *et al.* | |

Present: The Honorable Michelle Williams Court, United States District Judge

| T. Jackson | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings: (IN CHAMBERS) Order DENYING Petitioner's Motion for Preliminary Injunction (Dkts. 9, 11)**

  Before the Court is Petitioner R.S.'s ("Petitioner") motion for preliminary injunction ("Motion") to enjoin Ernesto Santacruz, Jr., Todd M. Lyons, Kristi Noem, the U.S. Department of Homeland Security, Pamela Bondi, the Executive Office for Immigration Review, and Fereti Semaia (collectively, "Respondents") from continuing to detain him pending the adjudication of his Petition for Writ of Habeas Corpus ("Petition").[1] *See* Dkt. # 9 ("*Mot.*"). Respondents opposed ("Opposition"), *see* Dkt. # 12 ("*Opp.*"), and Petitioner replied ("Reply"), *see* Dkt. # 13 ("*Reply*"). The Court held a hearing on the Motion on October 15, 2024. *See* Dkt. # 15. At that hearing, the Court granted Petitioner's *ex parte* application to file supplemental briefing. *Id.* In addition to the supplemental briefing filed along his *ex parte* application, *see* Dkt. # 11-2 ("*Petitioner's First Supp. Brief*"), Petitioner filed supplemental briefing on October 17, 2024, to address the Court's questions from the hearing, *see* Dkt. # 16 ("*Petitioner's Second Supp. Brief*"). Respondents filed supplemental briefing on October 20, 2024. *See* Dkt. # 17 ("*Respondents' Supp. Brief*"). After considering the papers, and for the reasons set forth below, the Court **DENIES** the Motion.

---

[1] Ernesto Santacruz, Jr. is the Field Office Director of Enforcement and Removal Operations at the Adelanto Field Office for U.S. Immigration and Customs Enforcement ("ICE"); Todd M. Lyons is the Acting Director of ICE; Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"); Pamela Bondi is the Attorney General of the United States; and Fereti Semaia is the Warden of the Adelanto Detention Facility.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  5:25-cv-02594-MWC-SK                                                      Date: October 28, 2025

Title:       R.S. v. Ernesto Santacruz, Jr. *et al.*

I.     Background

The Motion details that Petitioner is a 42-year-old man originally from Iran. Dkt. # 9-1 ("*Kahn Decl.*") ¶ 3. He fled Iran after protesting the current Iranian regime, though the Iranian government beat and threatened him with incarceration and execution prior to his departure. *Id.* Petitioner arrived in the United States around December 22, 2022, by crossing the U.S.-Mexico border and entered the United States without inspection. *Id.* ¶ 4. Upon entering the United States, Petitioner surrendered himself to U.S. immigration authorities and requested asylum. *Id.* After he spent roughly five days in detention, ICE released Petitioner on his own recognizance and served him with a Notice to Appear on February 22, 2023. *Id.* ¶¶ 4–6.

Pursuant to 8 U.S.C. § 1229(a), ICE placed Petitioner in removal proceedings. *Id.* ¶ 8. It charged Petitioner with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) based on an allegation that he entered the United States without inspection. *Id.* Petitioner has since complied with ICE's requests of him, including attending all court hearings and filing his application for asylum within the one-year filing deadline. *Id.* ¶ 9. His application for asylum was based on his assertion that he would suffer political violence if he returned to Iran. *Id.* ¶ 10.

Around November 2024, Petitioner accidentally crossed the U.S.-Mexico border when meeting a friend near the San Ysidro Port of Entry. *Id.* ¶ 12. Petitioner explained the situation to the border agents nearby, who immediately let him re-enter the United States and allowed him to return home. *Id.*

On June 4, 2025, Petitioner began his Merits Hearing before United States Immigration Judge Joyce Bakke Varzandeh. *Id.* ¶ 13. To allow for further testimony, Judge Varzandeh continued the Merits Hearing to July 14, 2025. *Id.* On June 30, 2025, however, ICE detained Petitioner at his home and took him to the Adelanto Detention Facility, where he has remained since. *Id.* ¶ 14. Petitioner sought a bond hearing on July 7, 2025, but Judge Varzandeh issued a decision on July 11, 2025, denying bond by ruling that she lacked jurisdiction to grant the requested relief. *Id.* ¶ 15.

R.S.'s continued Merits Hearing was rescheduled to take place before Immigration Judge Curtis White on October 2, 2025. *Id.* ¶ 16. After he began hearing testimony at that hearing, Judge White continued the Merits Hearing to November 6, 2025. *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02594-MWC-SK                                                      Date: October 28, 2025

Title:   R.S. v. Ernesto Santacruz, Jr. *et al.*

On September 30, 2025, Petitioner filed the Petition and an application for a temporary restraining order ("TRO"). *See* Dkts. # 1 ("*Pet.*"), 3 ("*TRO App.*"). The application seeking a temporary restraining order did not contest Petitioner's pending removal proceedings or ICE's authority to remove him. *TRO App.* 4. Rather, Petitioner "challenge[d] the processes ICE has employed and continue[d] to employ to detain [Petitioner] while his removal proceedings are pending." *Id.* He asked the Court for an order: (i) granting his immediate release, or in the alternative, "order another bond hearing before a non-detained Immigration Judge or the District Court"; (ii) preventing Respondents from imposing any additional restrictions on him unless a court otherwise deems them necessary at a future hearing; (iii) enjoining Respondents from re-detaining or re-arresting Petitioner absent pre-deprivation notice describing the change of circumstances necessitating his arrest and detention, and a timely hearing accompanying such a notice; and (iv) establishing that, at any hearing of the kind Petitioner requested, Respondents bear the burden "of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight" (and allow Petitioner to have counsel present at such a hearing). *Id.* 12–13.

On October 3, 2025, the Court granted in part and denied in part the application for a temporary restraining order. *See* Dkt. # 7 ("*TRO*"). The Court ordered that Respondents provide Petitioner with an individualized bond hearing before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven days of that order but denied Petitioner's requested relief in all other respects. *TRO* 9.

On October 9, 2025, Judge White held an individualized bond hearing for Petitioner. *See Petitioner's First Supp. Brief* 2. After hearing argument, Judge White denied bond. *Id.* 3. Judge White concluded that Petitioner did not meet his burden to show that he was not a flight risk, noting that the following factors were of particular concern: (1) Petitioner's history of unlawful entry and, specifically, Petitioner's 2022 apprehension near Eagle Pass Texas and "a 11/17/2024 parole by Customs and Border Patrol at the San Ysidro Port of entry"; (2) Petitioner's lack of sufficiently strong ties to the United States as a result of the record not showing a lengthy residence in the United States nor close family with legal status or property in the United States; (3) the record showing an inconsistent address for Petitioner; (4) the record showing a lack of sponsorship or commitment of others to provide support with financing, housing, transportation, or compliance with conditions of release, attendance at hearings, and Court orders; (5) a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-02594-MWC-SK                                                  Date: October 28, 2025

Title:       R.S. v. Ernesto Santacruz, Jr. *et al.*

"history of incompliance with appearance," citing Petitioner's failure to appear before an Immigration Judge in Virginia; and (6) the presence of "disincentives to appear for future hearings including prospects of relief from removal being overly speculative." *Id.*

Petitioner argues that Judge White's determination that Petitioner was a flight risk was an abuse of discretion. *Id.* 4. He cites several factual inaccuracies central to Judge White's reasoning and argues that Judge White's determination that no amount of bond would guarantee Petitioner's future appearances was unreasonable. *Id.* 5–7. He asks for immediate release or, in the alternative, that this Court order another bond hearing before a non-detained Immigration Judge or the District Court. *Id.* 7.

Respondents opposed the Motion by asserting that Petitioner's receipt of a bond hearing mooted the requested preliminary injunction. *Opp.* 1. Respondents also argue that this Court lacks jurisdiction to undo Judge White's ruling and that Petitioner offered no additional facts to his application seeking the TRO to justify his immediate release. *See id.* 4–5.

II.      Petitioner's Motion for Preliminary Injunction

    A.      Legal Standard

To obtain a preliminary injunction, "the moving party must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest." *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1124 (9th Cir. 2014) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Alternatively, "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (internal quotation marks and citation omitted). Where the non-movant is a government entity, "the third and fourth factors . . . merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02594-MWC-SK                                          Date: October 28, 2025

Title:   R.S. v. Ernesto Santacruz, Jr. *et al.*

B.   Likelihood of Success on the Merits

i.   Request to Overturn Immigration Court's Ruling

The Court begins with the question of its jurisdiction to review Judge White's decision, because if the Court cannot hear a claim, Petitioner cannot succeed on it. *See Williams v. Dep't of Just.*, No. 2:24-cv-05406-DDP (AJR), 2024 WL 3915922, at *2 (C.D. Cal. July 25, 2024) ("Because the Court appears to lack jurisdiction over Plaintiff's claims, Plaintiff cannot demonstrate a substantial likelihood of success on the merits of his claims." (collecting cases)). "The Ninth Circuit has stated that an alien dissatisfied with an [Immigration Judge's] bond determination has the option of appealing to the BIA." *Cruz v. Sessions*, No. 18-CV-06215-LHK, 2018 WL 6047287, at *4 (N.D. Cal. Nov. 18, 2018) (citing *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)); *see also Diaz Reyes v. Mayorkas*, 854 Fed. Appx. 190, 191 (9th Cir. 2021) ("Under *Leonardo v. Crawford*, . . .[] a petitioner is generally required to exhaust administrative remedies before seeking judicial review of challenges to an [Immigration Judge's] denial of bond.").

The Court finds that it does not have jurisdiction to review Judge White's bond determination. Petitioner does not contend that he has appealed to the Board of Immigration Appeals, but instead cites *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024), for the proposition that a District Court can review a bond determination. *See Petitioner's First Supp. Brief* 4. Importantly, however, the District Court's decision at issue in *Martinez* was a review of a BIA decision, not the decision of an Immigration Judge at an initial bond hearing.[2] *See Martinez*, 124 F.4th at 781. Petitioner does not offer—nor is the Court aware of—any authority showing that a District Court can review an Immigration Judge's determination directly, rather than requiring appeal first to the BIA. Rather, *Leonardo* requires the opposite, and as further detailed below, Petitioner has not shown that he is entitled to an exception to the administrative exhaustion requirement. *See Leonardo*, 646 F.3d at 1160–61. Petitioner cites out-of-circuit precedent from several decades ago to argue that the Court has inherent authority to review Petitioner's claim at this stage, *see Petitioner's Second Supp. Brief* 2, but this Circuit's precedent forecloses such an argument, *see Leonardo*, 646 F.3d at 1160–61.

---

[2] Specifically, the Petitioner in *Martinez* brought a federal habeas petition under 28 U.S.C. § 2241, asserting that the BIA incorrectly evaluated the Immigration Judge's bond determination. *Martinez*, 124 F.4th at 781.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02594-MWC-SK                                     Date: October 28, 2025

Title:      R.S. v. Ernesto Santacruz, Jr. *et al.*

    Petitioner offers two other arguments in favor of his requested relief. First, he contends that Immigration Judges are not neutral adjudicators because they are subject to political pressure. *Petitioner's Second Supp. Brief* 2. To be sure, Immigration Courts are part of the Executive Branch, unlike U.S. District Courts, which are part of the Judiciary. But to adopt Petitioner's argument would upset the entire apparatus underlying the review of immigration claims in the United States, which this Court is not prepared to do on such a limited record. *Cf. Renne v. Geary*, 501 U.S. 312, 324 (1991) (stating that the issues "argued in the briefs filed here have fundamental and far-reaching import. For that very reason, we cannot decide the case based upon the amorphous and ill-defined factual record presented to us.").

    Second, Petitioner argues that administrative exhaustion is not required because an appeal to the BIA would be futile or irreparably harm Petitioner. *See Petitioner's Second Supp. Brief* 4. As to futility, Petitioner has not offered any evidence that the BIA has adjudicated a case with facts closely resembling Petitioner's, so it is not obvious to the Court that an appeal would be futile. *See Aden v. Nielsen*, No. C18-1441RSL, 2019 WL 5802013, at *3 (W.D. Wash. Nov. 7, 2019) ("Petitioner has not demonstrated that the BIA has a specific policy of affirming IJs' bond decisions and has therefore not shown that appeal would be futile."). As to irreparable harm, Petitioner offers no precedent beyond a general standard from *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017), to show that his irreparable harm is sufficiently weighty for the Court to excuse exhaustion requirements. *See Petitioner's Second Supp. Brief* 3. Since the Court can excuse exhaustion in only "exceptional circumstances," *see Cabaccang v. U.S. Citizenship and Immigr. Servs.*, 627 F.3d 1313, 1316 (9th Cir. 2010), the Court cannot excuse exhaustion here based on the few facts that Petitioner submits. Accordingly, the Court cannot review Judge White's bond determination.

    Even assuming *arguendo* that the District Court could review Judge White's determination, Petitioner has not made the requisite showing for the Court to overturn that decision. Immigration detainees held in custody under 8 U.S.C. § 1226(a) have "[t]he burden . . . to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). "In general, an Immigration Judge must consider whether an alien who seeks a change in custody status is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* There are several specific factors that an Immigration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  5:25-cv-02594-MWC-SK                                                Date: October 28, 2025

Title:       R.S. v. Ernesto Santacruz, Jr. *et al.*

Judge may consider when evaluating whether to release an immigration detainee on bond, which include:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.*

"After *Wilkinson*, the determination whether an alien is 'dangerous' for immigration-detention purposes is a mixed question of law and fact and is reviewable as a 'question of law.'" *Martinez*, 124 F.4th at 779 (referencing *Wilkinson v. Garland*, 601 U.S. 209 (2024)).[3] "Under *Wilkinson*, the district court's review of the BIA's 'dangerousness' determination is for abuse of discretion . . . ." *Id.* at 779–80. Under an abuse of discretion standard, "'we cannot reweigh evidence . . . [but] can [only] determine whether the BIA applied the correct legal standard.'" *Id.* at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

Petitioner argues that Judge White's determination that Petitioner was a flight risk was incorrect for several reasons. First, Judge White's concern about Petitioner's failure to appear before an Immigration Judge in Virginia was due to his never residing in Virginia. *Petitioner's First Supp. Brief* 5. Additionally, Petitioner has appeared for all immigration proceedings in Los Angeles. *Id.* 6. As to Petitioner's crossing the U.S.-Mexico border in

---

[3] As Petitioner points out, since the factors are the same for evaluating dangerousness to the community and flight risk, the same standard of review would apply when reviewing either determination. *See Petitioner's First Supp. Brief* 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No.  5:25-cv-02594-MWC-SK                                                      Date: October 28, 2025

Title:         R.S. v. Ernesto Santacruz, Jr. *et al.*

2024, U.S. Customs and Border Patrol allowed Petitioner back into the United States immediately.  *Id.*  Petitioner also has employment authorization and will continue to work following his release, which offers him financial support upon release from detention.  *Id.*  Petitioner further argues that "Judge White seemed to rely on the fact that [Petitioner] is considered a flight risk because there is a significant chance that [Petitioner's] asylum claim—which is currently pending before Judge White himself—will not be granted," and contends that Judge White's reasoning does not hold up when one extends it to its logical conclusion.  *Id.* 6–7.

These arguments, even if persuasive, do not suggest that Judge White applied the incorrect legal standard.  Rather, Petitioner seems to be asking the Court to reweigh evidence, which *Martinez* forbids.  *See Martinez*, 124 F.4th at 785.  Without an indication as to what legal standard Judge White incorrectly applied, this Court cannot overturn the bond determination, even if a request for such relief had arrived through the proper posture.

Accordingly, due to both the Court's lack of jurisdiction and based on the arguments that Petitioner has presented to overturn Judge White's bond determination, Petitioner is unlikely to succeed on the merits of his claim.

   *ii.*  *Request for Immediate Release from Detention*

For the reasons that the Court outlined in the TRO, *see TRO* 8, Petitioner has not made the requisite showing that he is likely to succeed on the merits of his request for immediate release from detention and other associated relief.  "Courts should act cautiously when reviewing matters entrusted to the Executive Branch, especially those involving immigration, lest it alter the balance between co-equal branches of government."  *Jazi v. Rubio*, No.: 25-cv-27 BEN, 2025 WL 2420690, at *2 (S.D. Cal. Aug. 20, 2025); *see also Noem v. Vasquez Perdomo*, 606 U.S. ___, ___ S. Ct. ___, 2025 WL 2585637, at *5 (2025) (Kavanaugh, J., concurring) ("Especially in an immigration case like this one, it is also important to stress the proper role of the Judiciary . . . . [W]e . . . must decline to step outside our constitutionally assigned role to improperly *restrict* reasonable Executive branch enforcement of the immigration laws" (emphasis in original)).  The Motion does not contest that Petitioner may be subject removal.  *See generally Mot.*; *Reply*.  Without more—and mindful of its limited role—the Court cannot assume that ICE has no basis to detain Petitioner.  Moreover, Petitioner has other recourse to request relief—first by appealing Judge White's decision to the BIA, then by returning to an Article III court if his

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.   5:25-cv-02594-MWC-SK                                          Date: October 28, 2025

Title:   R.S. v. Ernesto Santacruz, Jr. *et al.*

appeal is unsuccessful. Additionally, at this stage the Court is cautious not to step outside of its limited role by preventing Respondents from imposing any additional restrictions on Petitioner or re-detaining Petitioner if Respondents decide to release him.

Accordingly, Petitioner has not shown that he is likely to succeed on the merits as to his requested relief.

    C.    Remaining *Winter* Factors

Though the Court cannot grant the requested preliminary injunction without a showing of likelihood of success on the merits (or a serious question going to the merits), the Court will evaluate the remaining *Winter* factors for clarity of the record. Beginning with irreparable harm, in general, "[t]he Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'" *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) (quoting *Hernandez*, 872 F.3d at 995). Those harms can include "the subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees who parents are detained." *Hernandez*, 872 F.3d at 995. Moreover, "[d]eprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994). Petitioner cites the impact of ICE detention on his mental health and identifies that he is likely to lose his job, identifying the possibility that he has already lost it. *Mot.* 21. He also cites the stress associated with the potential that he will have to return to Iran. *Id.* On balance, these contentions are sufficient to show that Petitioner is suffering ongoing irreparable harm. *Cf. Pinchi v. Noem*, No. 5:25-cv-05632-PCP, 2025 WL 2084921, at *7 (N.D. Cal. July 24, 2025); *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1056 (N.D. Cal. 2021).

However, the balance of equities and public interest factors do not show that the Court must order Petitioner released. "It is always in the public interest to protect the country's borders and enforce its immigration laws." *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 501 F. Supp. 3d 792, 825 (N.D. Cal. 2020) (citing *Landon v. Plascencia*, 459 U.S. 21, 24 (1982)). Petitioner does not contest his pending removal proceedings, so the Court cannot assume that there is no basis for detaining Petitioner or that his detention is not related to the proper enforcement of the nation's immigration laws. Petitioner also relies heavily on due process violations, *Mot.* 21, but the provision of a bond hearing has

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No.  5:25-cv-02594-MWC-SK | Date: October 28, 2025 |
| Title:  R.S. v. Ernesto Santacruz, Jr. *et al.* | |

addressed those violations.  The fact that Judge White determined that Petitioner may be a flight risk tips the balance of equities further in favor of Respondents.  *See Dawson v. Asher*, 447 F. Supp. 3d 1047, 1050 (W.D. Wash. 2020) ("[P]reventing detained aliens from absconding and ensuring that they appear for removal proceedings is a legitimate governmental objective." (citations omitted)).

Despite his showing as to irreparable harm, and even if the Court determined that the balance of equities tipped in his favor, without a likelihood of success on the merits, the Court cannot issue Petitioner's requested injunction.  *See Cal. Grocers Ass'n v. City of Long Beach*, 521 F. Supp. 3d 902, 909 (C.D. Cal. 2021).

III.   Conclusion

For the foregoing reasons, the Court **DENIES** Petitioner's motion for preliminary injunction.  Because the Immigration Court has already held a bond hearing in line with the Court's October 3, 2025 TRO, that order is **WITHDRAWN**.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| **Initials of Preparer** | TJ |